# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAWRENCE IRA CLAYTON, by and through WANDA LOUISE CLAYTON, Next friend and attorney-in-fact, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-13-486-M |
| ED LAKE, Director of Oklahoma Department of Human Services; JOEL NICO GOMEZ, Director of Oklahoma Health Care Authority, | ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

This case is scheduled for trial on the Court's February 2014 trial docket.

Before the Court is plaintiff's Motion for Summary Judgment, filed December 2, 2013. On December 23, 2013, defendants filed their response, and on December 24, 2013, plaintiff filed his reply. Based upon the parties' submissions, the Court makes its determination.

I. Introduction[1]

Plaintiff Lawrence Ira Clayton ("Mr. Clayton") is married to Wanda Louise Clayton ("Mrs. Clayton"). Mr. and Mrs. Clayton have three children, Susan Burton, Larry Clayton, and Kevin Clayton. On October 30, 2012, Mr. and Mrs. Clayton owned $245,438 of assets.

On October 31, 2012, Mrs. Clayton loaned $44,000 to Susan Burton and her spouse, Joseph Burton, in exchange for a promissory note in the amount of $44,000 ("Susan Burton Note"). The Susan Burton Note was secured by a real estate mortgage on land belonging to Susan and Joseph

---

[1]The facts set forth in this Introduction are not disputed by the parties.

Burton. On October 31, 2012, Mrs. Clayton also loaned $44,000 to Kevin Clayton and his spouse, Michele Clayton, in exchange for a promissory note in the amount of $44,000 ("Kevin Clayton Note"). The Kevin Clayton Note was secured by a real estate mortgage on land belonging to Kevin and Michele Clayton. Finally, on October 31, 2012, Mrs. Clayton loaned $44,000 to Larry Clayton and his spouse, Rebecca Clayton, in exchange for a promissory note in the amount of $44,000 ("Larry Clayton Note"). The Larry Clayton Note was secured by a real estate mortgage on land belonging to Larry and Rebecca Clayton.

On December 17, 2012, Mr. Clayton filed an application for ADvantage Waiver medical assistance with the Oklahoma Department of Human Services ("OKDHS"). On April 23, 2013, OKDHS issued a "Notice of Denial" denying Mr. Clayton's application for medical assistance because: (1) the promissory notes are worth more than $2,000; (2) the transfers of money in exchange for the promissory notes were transfers without the receipt of fair market value in return; (3) the promissory notes are trust-like devices; and (4) Mr. and Mrs. Clayton owned resources exceeding the agency resource standards. After receiving the denial from OKDHS, Mr. Clayton filed the instant action requesting this Court to determine it was error for OKDHS to find him ineligible for Medicaid benefits. Mr. Clayton now moves for summary judgment.

II.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving

party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

    A.    Enforceable rights under 42 U.S.C. § 1983

Plaintiff's Complaint alleges that defendants violated two sections of the federal Medicaid Act: (1) 42 U.S.C. § 1396p(c)(2)(C), and (2) 42 U.S.C. § 1396p(c)(1)(I). Defendants assert that plaintiff lacks standing to bring this case because these two sections do not confer a private right to enforce.

It is well established that some statutory rights may be enforced through § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002). "As in the implied right of action context, the primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'" *Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting *Gonzaga Univ.*, 536 U.S. at 285). The United States Supreme Court has set forth three factors to be used in making this determination:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the

3

> right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal quotations and citations omitted). "A statute embodies congressional intent to benefit the plaintiff only if it is 'phrased in terms of the persons benefited.'" *Hobbs*, 579 F.3d at 1179 (quoting *Gonzaga Univ.*, 536 U.S. at 284). Further, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (internal quotations and citation omitted).

In this case, plaintiff alleges defendants violated 42 U.S.C. § 1396p(c)(2)(C). That section provides:

> (2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that –
> \*          \*          \*
> (C) a satisfactory showing is made to the State (in accordance with regulations promulgated by the Secretary) that (i) the individual intended to dispose of the assets either at fair market value, or for other valuable consideration, (ii) the assets were transferred exclusively for a purpose other than to qualify for medical assistance, or (iii) all assets transferred for less than fair market value have been returned to the individual; . . . .

42 U.S.C. § 1396p(c)(2)(C). The Court finds that this section satisfies all prongs of the *Blessing* test. Specifically, the Court finds that Congress intended this section to benefit plaintiff. Section 1396p(c)(2)(C) specifically provides that an individual shall not be ineligible for medical assistance (a benefit) if the individual makes a satisfactory showing of one of three situations. This section speaks in terms of the individual benefitted rather than the person regulated by giving the individual a benefit rather than directing the state to act or not act in a certain way. The Court further finds that

4

this section also meets the second prong of the *Blessing* test because it is not so "vague and amorphous" that its enforcement would "strain the judicial competence." Section 1396p(c)(2)(C) clearly states that an individual shall not be ineligible for medical assistance if the individual makes a satisfactory showing of one of three situations. Determining whether an individual has made such a showing would not strain the judicial competence. Finally, the Court finds that this section satisfies the third prong of the *Blessing* test because it unambiguously imposes a binding obligation on the states. The words "shall not" in § 1396p(c)(2)(C) make it clear the state has an obligation not to deprive a covered individual of medical assistance if the individual makes the requisite showing.

Accordingly, the Court finds that § 1396p(c)(2)(C) provides an adequate statutory foundation for a lawsuit brought pursuant to § 1983.[2]

B.  Eligibility

In their response, defendants contend that even if you accept plaintiff's assertions that the promissory notes are not assets or transfers of assets, plaintiff's application shows he was ineligible for Medicaid and OKDHS acted correctly in denying his Medicaid application. Specifically, defendants assert that Mrs. Clayton's protected share of resources must be calculated according to the resources Mr. and Mrs. Clayton owned on the application date, December 17, 2012, not those resources they owned on October 30, 2012. Defendants assert that Mr. and Mrs. Clayton's countable resources on December 17, 2012 were $113,438 ($245,438 owned on October 30, 2012 minus the $132,000 cash loaned to the children) and that Mrs. Clayton's protected share was half

---

[2]Because § 1396p(c)(2)(C) provides a basis for bringing the instant action pursuant to § 1983, this Court declines to address whether any other statute provides a basis.

– $56,719. Defendants, therefore, contend that the remaining $56,719 is to be attributed to Mr. Clayton and $54,719 must be spent down before he meets the $2,000 Medicaid resource cap.

Plaintiff asserts that pursuant to 42 U.S.C. § 1396a(a)(34), a Medicaid application is effective back to the third month before the month in which an application is filed, and, therefore, Mr. Clayton's application is effective back to September 17, 2012. Plaintiff further asserts that Mr. and Mrs. Clayton's resources should be calculated during that three-month period. Plaintiff contends that on October 30, 2012, Mr. and Mrs. Clayton's assets totaled $245,438 and after deducting the maximum community spouse resource allowance of $113,640 and $2,000 for Mr. Clayton's allowance, a spend down of $129,798 was left. Plaintiff further contends that on October 31, 2012, Mrs. Clayton spent down assets by loaning $132,000, resulting in Mr. and Mrs. Clayton having fully satisfied their spend down. Plaintiff also contends that at no point over the last year did defendants ever calculate the couple's assets and spend down differently than how plaintiff had until now.

When a person applies for ADvantage Waiver medical assistance, he and his spouse's resources are divided between them according to the method set forth in 42 U.S.C. § 1396r-5. That statute provides, in pertinent part:

> (c) **Rules for treatment of resources.**
> \* \* \*
> (2) Attribution of resources at time of initial eligibility determination. In determining the resources of an institutionalized spouse at the time of application for benefits under this title, regardless of any State laws relating to community property or the division of marital property –
> > (A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and
> > (B) resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under

6

subsection (f)(2)(A)[3] (<u>as of the time of application for benefits</u>).

42 U.S.C. § 1396r-5(c)(2) (emphasis added). Additionally, the Oklahoma Administrative Code 317:35-17-11 – Determining financial eligibility for ADvantage program provides, in pertinent part:

> (B) **Resource eligibility**. To determine resource eligibility, it is necessary to determine the amount of resources for both spouses <u>for the month of the individual's application for the ADvantage program</u>.
> . . .
> > (i) The first step in the assessment process is to establish the total amount of resources for the couple <u>during the month of application of the spouse into the ADvantage program services</u> (regardless of payment source).

OAC 317:35-17-11 (3)(B)(i) (emphasis added).

Thus, based upon the above provisions, it appears that defendants are correct that Mrs. Clayton's protected share of resources must be calculated according to the resources Mr. and Mrs. Clayton owned on the application date, December 17, 2012, not those resources they owned on

---

[3]Subsection (f)(2)(A) provides:
>  (2) Community spouse resource allowance defined. In paragraph (1), the "community spouse resource allowance" for a community spouse is an amount (if any) by which –
> > (A) the greatest of –
> > > (i) $12,000 (subject to adjustment under subsection (g)), or, if greater (but not to exceed the amount specified in clause (ii)(II)) an amount specified under the State plan,
> > > (ii) the lesser of (I) the spousal share computed under subsection (c)(1), or (II) $60,000 (subject to adjustment under subsection (g)),
> > > (iii) the amount established under subsection (e)(2);
> > or
> > > (iv) the amount transferred under a court order under paragraph (3); . . . .

42 U.S.C. § 1396r-5(f)(2)(A). In 2012, the year plaintiff applied, the minimum community spouse resource allowance was $25,000 and the maximum was $113,640.

October 30, 2012. Plaintiff, however, asserts that 42 U.S.C. § 1396a(a)(34) alters that conclusion. That section provides:

> A State plan for medical assistance must –
> \*     \*     \*
> (34) provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished; . . . .

42 U.S.C. § 1396a(a)(34).

Having carefully reviewed § 1396a(a)(34), the Court finds that this statutory provision does not address in any way the calculation of an individual's resource eligibility. Section 1396a(a)(34) merely sets forth what a state plan for medical assistance must provide for an individual who has already been determined to be eligible for medical assistance. It in no way addresses how to determine whether an individual is eligible. Accordingly, the Court finds that it has no application to the issue of whether Mrs. Clayton's protected share of resources should be calculated based on the application date or some date within the three months prior to the application date.

Having carefully reviewed the parties' submissions, the Court also finds that defendants have not improperly changed their position as to how Mr. and Mrs. Clayton's assets and spend down should be calculated. Defendants consistently have asserted that the $132,000 in promissory notes should be counted as resources. Additionally, upon review of the court file, the Court finds that defendants have not asserted that the calculation of Mr. and Mrs. Clayton's assets and spend down should be based upon some date prior to the application date. In their response, defendants simply

8

make, for the first time, the assertion that even if plaintiff is correct in the treatment of the promissory notes, Mr. Clayton is still ineligible.

Accordingly, the Court finds that even assuming the three promissory notes are not countable resources, OKDHS acted correctly in denying Mr. Clayton's application for Medicaid services through the ADvantage program because he had more than $2,000 in countable resources. Specifically, assuming the three promissory notes are not countable resources, as of December 17, 2012, Mr. and Mrs. Clayton's countable resources were $113,438, and Mrs. Clayton's protected share was half – $56,719, leaving $56,719 attributable to Mr. Clayton, which is an amount well over the $2,000 Medicaid resource cap.

IV. Conclusion

Therefore, for the reasons set forth above, the Court DENIES plaintiff's Motion for Summary Judgment [docket no. 31]. Further, because there are no disputed facts, and the Court has found based upon those undisputed facts and the applicable law that OKDHS acted correctly in denying Mr. Clayton's application for Medicaid services through the ADvantage program because he had more than $2,000 in countable resources, the Court FINDS that defendants are entitled to judgment in their favor.

**IT IS SO ORDERED this 21st day of January, 2014.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE